```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------x
AMERICAN HOME ASSURANCE COMPANY a/s/o
OCE PRINTING SYSTEMS GmbH,

                              Plaintiff,
                                                06 Civ. 6389 (DFE)
       -against-
                                                OPINION AND ORDER
KUEHNE & NAGEL (AG & CO.) KG,
                                                This is an ECF case
       Defendant and Third-Party Plaintiff,

       -against-

ALLIANCE AIR and POLAR AIR CARGO, INC.

                     Third-Party Defendants.
--------------------------------------x
```

DOUGLAS F. EATON, United States Magistrate Judge.

     This case arises out of an air shipment from Germany to Illinois in August 2004. The actual air carrier was Polar Air Cargo, Inc. ("Polar"), pursuant to a contract between Polar and Kuehne & Nagel (AG &Co.) KG ("K&N"). After being sued for cargo damage, K&N filed a third-party complaint in June 2007 against (a) Polar and (b) Polar's ground handling agent Alliance Air ("Alliance").

     K&N concedes that its claim against Polar is barred by the two-year time bar in the Montreal Convention. But K&N argues that the time bar is inapplicable to its claim against Polar's agent because that agent was not itself an air carrier.

     For the reasons set forth below, I reject K&N's argument and I grant Alliance's motion for summary judgment.

FACTUAL AND PROCEDURAL BACKGROUND

     The following facts are set forth in Alliance's Local Civil Rule 56.1 Statement (which K&N has not disputed) and the declarations and exhibits cited therein.

     On August 5, 2004, K&N, a freight forwarder, issued its House Air Waybill to Océ Printing Systems GMBH ("Océ"). K&N acknowledged that it had received the cargo from Océ. As the

contract carrier, K&N agreed to deliver the cargo from Munich, Germany to Chicago, Illinois to the consignee, Caterpillar, Inc. Also on August 5, 2004, K&N contracted with Polar, which agreed to assume all of the responsibilities and duties of the air carriage. Polar issued its Air Waybill, which listed the shipper as "KN Airlift GmbH" and the consignee as "Kuehne & Nagel, Inc." Alliance (the party that now asserts the two-year time bar) was Polar's ground handling agent at Chicago's O'Hare Airport.

On August 9, 2004, the cargo arrived at O'Hare aboard Polar flight 605. Pursuant to Polar's ground handling agreement, Alliance picked up the cargo from the tarmac and brought it to Alliance's warehouse within the airport. On August 12, 2004, K&N's trucking company picked up the cargo from Alliance and delivered it to K&N in Elk Grove, Illinois.

More than two years later, on August 23, 2006, American Home Assurance Company, as the subrogated cargo underwriter for Océ, filed this cargo damage lawsuit against Océ's contract carrier K&N. On October 12, 2006, K&N filed an Answer and Third-Party Complaint; for reasons unclear to me, K&N named Martinair Holland, N.V. ("Martinair") as the third-party defendant. On June 11, 2007, plaintiff filed an Amended Complaint which merely added a second theory. On June 12, 2007, K&N filed its Answer to the Amended Complaint and a revised Third-Party Complaint for contribution and indemnification. This Third-Party Complaint no longer named Martinair; instead it sued Polar (the air carrier) and Alliance (Polar's ground handling agent).

On July 13, 2007, an Answer to the revised Third-Party Complaint was filed by Alliance (technically by International Marketing Consultants Inc., which does business under the Alliance name and which I will continue to refer to as "Alliance"). That same day, Polar, in lieu of filing an Answer, moved to dismiss. Polar's motion invoked the two-year time bar; K&N filed no opposition, and I dismissed the Third-Party Complaint as to Polar on September 7, 2007.

On September 14, 2007, Alliance moved for summary judgment and invoked the two-year time bar. On September 29, 2007, K&N filed opposition papers, and on October 19, 2007, Alliance filed a reply memorandum.

DISCUSSION

The Montreal Convention "is an entirely new treaty that unifies and replaces the system of liability that derives from the Warsaw Convention." *Ehrlich v. American Airlines, Inc.*, 360 F.3d 366, 371 (2d Cir. 2004); Montreal Convention, Art. 1, 1999 WL 33292734. It became effective in the United States in November 2003 and in Germany in June 2004 (more than a month prior to the Air Waybill contracts in our case). (Alliance's 56.1 St. ¶¶ 13-14.) The Montreal Convention "applies to all international carriage of persons, baggage or cargo performed by aircraft for reward." *Ehrlich*, 360 F.3d at 372.

Article 35(1) of the Montreal Convention says:

> The right to damages shall be extinguished if an action is not brought within a period of two years, reckoned from the date of arrival at the destination, or from the date on which the aircraft ought to have arrived, or from the date on which the carriage stopped.

Case law regarding the Montreal Convention is quite limited; hence the parties begin by discussing cases that interpreted the identical provision contained in Article 29(1) of the Warsaw Convention.

According to the majority of those cases, the two-year period of limitation "constitutes a condition precedent -- an absolute bar -- to bringing suit, including third-party actions for contribution and indemnification, not commenced within two years." *Split End Ltd. v. Dimerco Express (Phils) Inc.*, 1986 WL 2199, at *6 (S.D.N.Y. Feb. 11, 1986) (Carter, J.). *Split End* is directly on point; it ruled that the two-year limit barred contribution and indemnification claims by a contract carrier against (a) the actual air carrier and (b) the air carrier's ground handling agent at the destination airport. *See also Data General Corp. v. Air Express Int'l Co.*, 676 F.Supp. 538, 540-41 (S.D.N.Y. 1988) (Tenney, J.) (the two-year limit barred contribution and indemnification claims against third-party air carrier); *Royal Ins. Co. v. Emery Air Freight Corp.*, 834 F.Supp. 633, 635-36 (S.D.N.Y. 1993) (Haight, J.) (same).

K&N concedes that, under both Conventions, the two-year time bar "appl[ies] to suits for indemnity and contribution against a carrier," and that hence K&N was obliged to drop its claim against the air carrier Polar. (K&N Memo. p. 2.) But K&N argues that the time bar is inapplicable to its claim against Polar's

-3-

agent because that agent was not itself an air carrier.  K&N
cites three cases that ruled the time bar to be inapplicable.
Those cases are fairly old, and none of them is directly on
point.

1. *Connaught Laboratories Ltd. v. Air Canada*, 15 Av.Cas.
(CCH) 17,795, 17,708, 1978 D.L.R. Lexis 4281 (Ontario High Court
of Justice 1978), where a single judge opined that the two-year
time bar did not apply to a contribution claim by one air carrier
(Air Canada) against another air carrier (Andes Airlines).  K&N
inaccurately states that Air Canada was claiming against a "non-
carrier agent."  (K&N Memo. p. 3.)  Moreover, in 1993, Judge
Haight wrote: "The limited persuasive value of the *Connaught* case
is plainly outweighed by cases decided in this district and
involving suits between carriers that have been held to come
under the Warsaw Convention."  *Royal Ins. Co.*, 834 F.Supp. at
634.

2. *Mitchell, Shackleton & Co., Ltd. v. Air Express Int'l,
Inc.*, 704 F.Supp. 524, 527-28 (S.D.N.Y. 1989) (Kram, J.).  In
*Mitchell*, the plaintiff used an air carrier to ship cargo from
England to New York.  Upon its arrival in New York, the machine
was damaged while being off-loaded by the air carrier's ground
handling agent.  The plaintiff sued the air carrier, which filed
a third-party complaint against its own ground handling agent.
Judge Kram accepted Judge Carter's *Split End* decision, but she
held that the two-year limit was intended to protect carriers and
was inapplicable to a third-party complaint for indemnity brought
by the actual air carrier against its own non-carrier agent.  The
case at bar is different in two respects: (1) K&N was not the
actual air carrier, and (2) K&N is not suing its own agent.

3. *Sabena Belgian World Airlines v. United Airlines, Inc.*,
773 F.Supp. 1117, 1120 (N.D. Ill. 1991), where Judge Conlon
followed *Mitchell* and wrote:  "While the Warsaw Convention's
limitations unquestionably applied to the main action against
Sabena, the policies underlying the two-year bar would not be
served by applying the limitation period to Sabena's action for
reimbursement [against Sabena's own ground handling agent]."

Those three cases do not detract from the authority of *Split
End*; it was cited with approval by *Mitchell*, which was then cited
with approval by *Sabena*.  *Split End* is on all fours with our
case; Judge Carter ruled that the two-year limit barred a third-
party complaint by a contract air carrier against (a) the actual
air carrier and (b) the air carrier's ground handling agent at
the destination airport.

-4-

K&N muddies *Split End's* facts by quoting one sentence from *Mitchell* where Judge Kram made a tiny error. Referring to *Split End* and *Data General*, she wrote: "Unlike these cases, however, third-party defendant Triangle is not an air carrier, but a ground handler." *Mitchell* at p. 526. In *Split End*, however, one third-party defendant was indeed a ground handler. Judge Kram correctly noted this in her preceding paragraph, and again on page 527:

> In *Split End*, the third-party action was initiated by a freight forwarder against the carrier and its [the carrier's] ground operations agent. ... In contrast, this is an indemnification suit by a carrier against its [own] non-carrier agent.

As I stated earlier, Judge Kram accepted the ruling in *Split End*, and *Split End* is on all fours with our case.

*Mitchell* and *Sabena* made a special exception where an actual air carrier was suing its own agent. But they recognized that settled case law enforced the Warsaw Convention's limitations against anyone else who sued a carrier's agent, even though the Warsaw Convention used the term "carrier" without specifically including a carrier's servants or agents. *Mitchell*, 704 F.Supp. at 526-27; *Sabena*, 773 F.Supp. at 1119.

The new Montreal Convention has a new Article 30(1) that specifically extends the conditions and limits of liability to the agents and servants of the air carrier. Article 30(1) states:

> If an action is brought against a servant or agent of the carrier arising out of damage to which the Convention relates, such servant or agent, if they prove that they acted within the scope of their employment, shall be entitled to avail themselves of the conditions and limits of liability which the carrier itself is entitled to invoke under this Convention.

Nevertheless, K&N makes two more arguments as to why it should be allowed to sue Polar's agent even after the two-year time limit has barred its suit against Polar.

<u>First</u>. K&N argues that the protection of Article 30(1) should not be extended to an "agent of the carrier" unless the agent is itself a carrier. But that would be a tortured reading of Article 30(1)'s words: "a servant or agent of the carrier."

No one could possibly argue that a servant of the carrier must himself be a carrier. And the Montreal Convention had no need to talk about an "agent" of a carrier if the agent must itself be a carrier. Moreover, that would be a dramatic departure from the case law that interpreted the Warsaw Convention. True, in *Split End* the ground handler happened to be an airline (Aer Lingus) but it provided no air carriage to the cargo in question. *See Kabbani v. Int'l Total Services*, 805 F.Supp. 1033, 1039-40 (D.D.C. 1992), where Judge Oberdorfer held that the Warsaw Convention's liability limits protected the carrier's independent contractor who supplied security services and took possession of a passenger's purse at a security checkpoint in the airport prior to departure. *See also Waxman v. C.I.S. Mexicana de Aviacion*, 13 F.Supp.2d 508, 513-15 (S.D.N.Y. 1998), where Judge Cote held that the Warsaw Convention's liability limits protected a carrier's agent's subcontractor which negligently cleaned the airplane prior to departure.

Second. K&N argues that there is a triable issue of fact as to whether Alliance "acted within the scope of [its] employment." It submits a declaration from its attorney Ernest H. Gelman, who has no personal knowledge but annexes two exhibits. Exhibit A is, he concedes, a copy of the Alliance delivery ticket for the cargo in question. It recites that the shipment was "received in full and apparent good order and condition;" it was signed by K&N's trucker John Morales and by Alliance's Sheldon Williams at 19:53. Exhibit B is a copy of a K&N form applying to the U.S. Customs Service for permission to transfer the cargo "to a C.F.S. transfer to Kuehne & Nagel, Inc., 1470 Brummel Ave., Elk Grove Village, IL." It was signed by John Morales with the date but no time. It was signed at 21:00 by "Dani M[?]" of K&N who noted:

    1 SKD CRASHED
    SHOCK WATCH IT IS ACTIVE

I would assume that "Dani" examined the cargo in Elk Grove, after it was driven there by K&N's trucker John Morales. If this were all, the inference would be that Mr. Morales caused the damage. However, although the K&N form had no space allotted for a fourth signature, nevertheless, at the bottom of Exhibit B, someone wrote "1 Box crushed Shock active" and below this is what appears to be the signature of Sheldon Williams, with no date or time. Mr. Gelman asserts that Exhibit A "was presented to Mr. Morales for signature before the cargo was transferred from the Alliance Air warehouse to his truck."

Even if we were to assume this to be true, and even if Mr. Williams were to testify that the box was crushed before he

-6-

transferred it to Mr. Morales, it is still clear that Alliance "acted within the scope of [its] employment" as an agent of the carrier Polar. Those words were added to the Montreal Convention against the backdrop of the Warsaw Convention. The earlier Convention gave its protections to the "carrier," an undefined term which the courts construed to include "air carriers' agents performing services 'in furtherance of the contract of carriage.'" *Waxman*, 13 F.Supp.2d at 514, citing four cases and, later on the same page, *American Home Assurance Co. v. Jacky Maeder (Hong Kong) Ltd.*, 969 F.Supp. 184, 191-92 (S.D.N.Y. 1997), where Judge Kaplan recognized that a cargo warehousing agent would be entitled to liability limitation to the same extent as would its carrier principal.

Alliance has proven that it was "acting within the scope of [its] employment" as Polar's agent:

1. Alliance was acting under its IATA Standard Ground Handling Agreement with Polar by picking up the cargo from the tarmac, holding the cargo in its warehouse at the airport, and delivering the cargo to K&N's trucker. (See undisputed Lee Decl. and its Exh. 1.)

2. Alliance was performing Polar's duty under Article 13(1) of the Montreal Convention: delivering the cargo to the consignee shown on Polar's Air Waybill.

3. Alliance's ground handling services were typical of services performed "in furtherance of the contract of carriage." *Waxman*, 13 F.Supp.2d at 514.

K&N has not disputed these key facts. Mr. Gelman's declaration has merely attempted to show that the damage occurred during the period when Alliance was handling the cargo, but he has not disputed that Alliance was doing Polar's work. For the purposes of the two-year limit barring suit, it is immaterial whether Alliance did that work badly.

CONCLUSION

I grant Alliance Air's motion for summary judgment, and I dismiss the Third-Party Complaint. The Clerk's Office has already removed Polar Air Cargo, Inc. from the caption as of September 7, 2007. I now direct the Clerk's Office to remove both Alliance Air and Martinair Holland, N.V. from the caption. I direct plaintiff's attorney and Kuehne & Nagel's attorney to place a joint telephone call to my courtroom deputy Helen Lewis at 212-805-6183 to schedule a telephone conference with me.

_____
DOUGLAS F. EATON
United States Magistrate Judge
500 Pearl Street, Room 1360
New York, New York 10007
Telephone: (212) 805-6175

Dated:     New York, New York
           March 25, 2008

Copies of this Opinion and Order are being sent by electronic filing to:

Thomas M. Grasso, Esq.
Cheri A. Chestnut, Esq.
Kennedy Lillis Schmidt & English
Attorneys for Plaintiff

Ernest H. Gelman, Esq.
Law Offices of Ernest H. Gelman
Attorneys for Keuhne & Nagel

Edward C. Radzik, Esq.
Matthew T. Loesberg, Esq.
McDermott & Radzik, LLP
Attorneys for Alliance Air