```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------x
AMERICAN HOME ASSURANCE COMPANY a/s/o
OCE PRINTING SYSTEMS GmbH,

                         Plaintiff,
                                          06 Civ. 6389 (DFE)
          -against-
                                          OPINION AND ORDER
KUEHNE & NAGEL (AG & CO.) KG,
                                          (This is an ECF case.)
                         Defendant.
---------------------------------------x
```

DOUGLAS F. EATON, United States Magistrate Judge.

     This case alleges cargo damage in connection with an air shipment of a digital printing system from Germany to Illinois. American Home Assurance Company ("American Home"), as the subrogated cargo underwriter for Océ Printing Systems GmBH ("Océ"), filed an Amended Complaint against Océ's freight forwarder Kuehne & Nagel (AG & Co.) KG ("K&N").

     K&N then filed a Third-Party Complaint against Polar Air Cargo, Inc. and Polar Air's ground handling agent Alliance Air. On September 7, 2007, I granted Polar Air's motion for dismissal. On March 25, 2008, I granted Alliance Air's motion for summary judgment.  *American Home Assur. Co. v. Kuehne & Nagel (AG & Co.) KG*, 544 F.Supp.2d 261 (S.D.N.Y. 2008).

     On November 20, 2008, K&N filed a motion (Docket Item #52) to dismiss the Amended Complaint on the ground that K&N had not been given proper notice of a claim for cargo damage.  (See also Docket Items ##53-54.)  On November 21, 2008, Plaintiff filed a cross-motion (Docket Item #55) seeking summary judgment.  (See also Docket Items ##56-61.)  On December 4, 2008, K&N filed a reply memorandum (Docket Item #62).  On December 5, 2008, Plaintiff filed the final reply memorandum (Docket Item #63). For the reasons set forth below, I grant K&N's dismissal motion and I deny Plaintiff's cross-motion.

FACTUAL BACKGROUND

     The following facts are set forth in the parties' 9/24/08 Stipulation of Facts ("9/24/08 Stip."), and in two declarations submitted by Plaintiff (Richard Freel's 10/29/08 Declaration and Charles Schmidt's 11/21/08 Declaration), and in Plaintiff's

-1-

11/21/08 Local Civil Rule 56.1 Statement ("Pl. 56.1 Stat."), which has not been disputed by K&N.

On August 5, 2004, K&N issued its House Air Waybill to Océ. As the contract carrier, K&N agreed to deliver the cargo (a printer and its accessories, contained in 12 cartons) from Munich, Germany to Caterpillar, Inc. ("Caterpillar") in Illinois. K&N acknowledged that it had received the cargo from Océ in good condition.  On August 5, 2004, K&N also contracted with Polar Air Cargo, Inc., which agreed to assume all of the responsibilities and duties of the air carriage.  Polar Air Cargo, Inc. issued its Air Waybill, which listed K&N as the shipper and Kuehne & Nagel, Inc. ("KNI") as the consignee.  (Pl. 56.1 Stat. ¶¶6-11.)

K&N and KNI are sister companies and wholly owned subsidiaries of Kuehne & Nagel International AG, a Swiss-based transport and logistics operator. (Pl. 56.1 Stat. ¶¶4, 11, 74.) KNI has not been served as a defendant.  K&N argues that KNI was merely a freight forwarder for the parent company, and that any cargo damage complaint had be made to the carrier (K&N) and not to KNI.  However, for the purposes of K&N's dismissal motion and Plaintiff's cross-motion, I will assume that notice to KNI was notice to K&N.

On August 9, 2004, the cargo arrived at Chicago's O'Hare Airport aboard Polar flight 605.  Pursuant to Polar's ground handling agreement, Alliance picked up the cargo from the tarmac and brought it to Alliance's warehouse within the airport.  On August 12, 2004, R&M Trucking (chosen by KNI) picked up the cargo from Alliance and delivered it to KNI's storage facility in Elk Grove, Illinois.  It now appears that the cargo was damaged prior to its arrival at KNI's Elk Grove facility.  (Pl. 56.1 Stat. ¶¶10-14, 35; 9/24/08 Stip. ¶¶2-4, 10-11.)  See my earlier opinion (544 F.Supp.2d at 265-66) describing two documents dated August 12, 2004 at 19:53 and 21:00 (Docket Item #43, Exhs. A and B). The 21:00 document said "1 sk[i]d crashed [crushed?;] shock watch it is active" and "1 box crushed[;] shock active."  My earlier opinion ruled that K&N's Third-Party Complaint against Alliance was time-barred; this mooted any need to resolve whether the damage to the skid and the box occurred during the custody of Alliance or during the custody of R&M Trucking.

Caterpillar designated North American Van Lines ("NAVL") to pick up the cargo at KNI's Elk Grove facility.  NAVL's truck driver James Ramirez picked up the 12 cartons on August 24, 2004. He signed KNI's delivery order, and he wrote on it on August 24, 2004:

    SOME CTNS [cartons] TORN & CRUSHED
    SUBJECT TO INSPECTION AT LATER DATE
    TIP & TELL ACTIVATED

(9/24/08 Stip. ¶2; Pl. 56.1 Stat. ¶¶19-31, 36; 11/21/08 Schmidt Decl. Exh. D2.)  Mr. Ramirez also filled out a NAVL inventory form; he wrote the following notations on pages 1 and 2 of the inventory form:

    [Page 1, referring to item 1]:
    CTN [carton] ON SKID SHOCK WATCH ACTIVATED
    PBS [packed by shipper]
    MCU [mechanical condition unknown] *
    CU [contents and condition unknown] *
    T [torn] @ ALL OVER

    [Page 1, referring to item 2]:
    CTN [carton] ON SKID
    T [torn],
    PBS [packed by shipper]
    MCU [mechanical condition unknown] *
    CU [contents and condition unknown] *

    [Page 1, referring to items 3 through 9]:
    T [torn], SC [scratched], R [rubbed], M [marred]
    @ ALL CTNS [cartons]

    [Page 2, referring to items 10 through 12]:
    CTN [carton] ON SKID
    PBS [packed by shipper]
    MCU [mechanical condition unknown] *
    CU [contents and condition unknown] *
    SC [scratched], R [rubbed], M [marred], T [torn],
    CRUSHED BOX

(9/24/08 Stip. ¶¶6-9; Pl. 56.1 Stat. ¶¶30-34, 44-47; 11/21/08 Schmidt Decl. Exh. D3.)  In the lines where I have added an asterisk (*) my inspection of the handwritten notations on Exh. D3 accords with ¶¶44-47 (and not with ¶¶30-34, which interpret some of the handwriting as saying "MINOR" instead of "MCU CU"). On this NAVL inventory form, Mr. Ramirez wrote the notations directly under a printed dictionary of symbols that included MCU and CU but not MINOR.

    After writing those notations, Mr. Ramirez handed both documents (the KNI delivery order and the NAVL inventory form) to a KNI warehouse employee.  (Pl. 56.1 Stat. ¶¶29, 38.)  At this point, none of the 12 cartons had been opened.  Mr. Ramirez did

not open any of the cartons; he transported them to NAVL's facility in Naperville, Illinois that same day.  Twenty-three days later, on September 16, 2004, NAVL delivered the cargo to Caterpillar's premises in Peoria, Illinois.  (Pl. 56.1 Stat. ¶ 53; 10/29/08 Freel Decl. Exh. A, p. 4.)

As I will discuss below, Article 31 of the Montreal Convention requires that, in the case of cargo damage, "the person entitled to delivery must complain to the carrier [in writing] forthwith after the discovery of the damage, and, at the latest, within ... fourteen days from the date of receipt."  Plaintiff's contention that K&N received a timely "complaint ... in writing" is based solely upon the notations written on August 24, 2004 by Mr. Ramirez.  (9/24/08 Stip. ¶12; Pl. 56.1 Stat. ¶51.)  Mr. Ramirez noted damage to the cartons (as opposed to the cargo inside the cartons).  Indeed, his notations included "MCU" [mechanical condition unknown] and "CU" [contents and condition unknown].  It appears that no one opened any of the cartons until after they were delivered to Caterpillar.

Caterpillar received the 12 cartons on September 16, 2004.  On that date, or soon thereafter, Caterpillar opened the cartons and noticed that the Print Unit portion was damaged.  However, Caterpillar did not make any written complaint to the carrier or to the carrier's agent "forthwith upon the discovery of the damage," nor within 14 days after Caterpillar received the cartons.  Sometime before October 6, 2004, Caterpillar determined that the Print Unit portion should be sent to the New Jersey service center of the seller Océ.  (10/29/08 Freel Decl. Exh. A p. 4; Pl. 56.1 Stat. ¶¶52, 62.)

Océ received the Print Unit portion in New Jersey sometime between October 6 and November 10, 2004.  On October 6, 2004, Océ's insurer (Plaintiff American Home) appointed Richard Freel to survey the damage.  On November 10, 2004, Océ advised Mr. Freel that the printer was at Océ's facility and that he could schedule a survey appointment.  He conducted his survey on November 16, 2004.  American Home determined that the amount of the loss was $65,500 (the sound value of $79,200 minus the salvage value of $13,700).  Hence, American Home paid Océ $65,500 to settle its claim.  (Pl. 56.1 Stat. ¶¶52-53, 55, 69-73; 10/29/08 Freel Decl. Exh. A pp. 4-5.)

It appears that no one notified KNI about damage to the cargo inside the cartons until sometime between October 6, 2004 and November 16, 2004.  That entire period was, of course, more than 14 days after Caterpillar received the cargo.  Mr. Freel writes:

> Before attending the survey, Ms. Pat O'Brien of Kuehne & Nagel, Inc. ("KNI") provided me a copy of KNI's US Customs Service documentation noting exceptions, "one skid crushed, shock watches active (red), one box crushed, shock active."
>
> Ms. O'Brien told me that the damage exceptions were observed by KNI when the shipment arrived at its Elk Grove, Illinois, facility.

(10/29/08 Freel Decl. ¶¶ 8-9; Pl. 56.1 Stat. ¶¶53-55.)  "KNI's US Customs Service documentation" was dated August 12, 2004 (12 days before Mr. Ramirez's notations).  A copy appears at Docket Item #43, Exh. B, and is described in my earlier opinion, 544 F.Supp.2d at 265-66.)

## DISCUSSION

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment will be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  *Roe v. City of Waterbury,* 542 F.3d 31, 35 (2d Cir. 2008).  "An issue of fact is genuine if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'  A fact is material if it 'might affect the outcome of the suit under the governing law.'"  *Id., quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510 (1986).

The court will construe the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor.  *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513.  Once the moving party has provided sufficient evidence to support a motion for summary judgment, the non-moving party can defeat it only "'by coming forward with evidence that would be sufficient, if all reasonable inferences were drawn in [its] favor, to establish the existence of [an] element at trial.'"  *Roe,* 542 F.3d at 35-36, *quoting Grain Traders, Inc. v. Citibank, N.A.,* 160 F.3d 97, 100 (2d Cir. 1998).

The parties agree that Article 31 of the Montreal Convention applies to this case.  The Montreal Convention "applies to all international carriage of persons, baggage or cargo performed by aircraft for reward."  *Ehrlich v. American Airlines, Inc.*, 360 F.3d 366, 372 (2d Cir. 2004).  It "is an entirely new treaty that unifies and replaces the system of liability that derives from the Warsaw Convention."  *Id*. at 371; Montreal Convention, Art. 1,

1999 WL 33292734. The Montreal Convention became effective in the United States in November 2003 and in Germany in June 2004 (more than a month prior to the Air Waybill contract in our case). Case law regarding Article 31 of the Montreal Convention is somewhat limited; therefore, the parties have appropriately cited case law that was interpreting the similar provision contained in Article 26 of the Warsaw Convention.

For example, Judge Buchwald, when she was a Magistrate Judge, wrote: "[T]he fact that Article 26 [of the Warsaw Convention] affords carriers the chance to investigate a damage claim obviously does not mean that they have a *duty* to do so. .... 'The clear dictates of Article 26(3) require written notice even if an agent of the air carrier has made some affirmative representation that [he or] she is aware of the damage or delay.'" *CPH International, Inc. v. Phoenix Assurance Co. of New York*, 1994 WL 259810, at *13 (S.D.N.Y. June 9, 1994) (emphasis in the original).

Article 31 of the Montreal Convention says (with my emphasis in bold font):

> Article 31 - - Timely Notice of Complaints
>
> 1. Receipt by the person entitled to delivery of checked baggage or cargo without complaint is *prima facie* evidence that the same has been delivered in good condition ....
>
> 2. In the case of damage, the person **entitled to delivery** must complain to the carrier **forthwith after the discovery** of the damage, and, at the latest, within ... **fourteen days from the date of receipt** in the case of cargo. ....
>
> 3. Every complaint must be made **in writing** and given or dispatched within the times aforesaid.
>
> 4. **If no complaint** is made within the times aforesaid, **no action shall lie against the carrier**, save in the case of fraud on its part. [There is no claim of fraud in the case at bar.]

Convention for the Unification of Certain Rules for International Carriage by Air, May 28, 1999 (entered into force in the U.S. on Nov. 4, 2003) ("Montreal Convention"), *reprinted in* S. Treaty Doc. No. 106-45, 1999 WL 33292734, at *38. Article 31, like the

Warsaw Convention's Article 26, is "designed to insure prompt notification to carriers of their exposure to liability." *Lokken v. Federal Express Corp.*, 2000 WL 193121, at *5 (S.D.N.Y. Feb. 16, 2000) (Katz, M.J.).

### The issue of whether the NAVL truck driver made a complaint on behalf of Caterpillar.

On September 24, 2008, Plaintiff and Defendant stipulated to 12 facts, including: "North American Van Lines ("NAVL") was entitled to receive and accept delivery of the Goods for and on behalf of consignee Caterpillar, Inc."  (9/24/08 Stip. ¶2.)

On November 20, 2008, Defendant argued:  "Although NAVL was hired by Caterpillar to complete the delivery, there is no evidence that [NAVL's] Mr. Ramirez was authorized to make a complaint on behalf of Caterpillar or Oce Printing Systems GmbH."  (Def. Memo. pp. 6-7.)

On November 21, 2008, Plaintiff served and filed its cross-motion for summary judgment.  Its Rule 56.1 Statement (Docket Item #61) included the following:  "38.  NAVL driver James Ramirez, **on behalf of Caterpillar**, tendered the document marked as Exhibit 2 to ... Schmidt Decl. Exh. D ... to a warehouse employee of KNI. ...."   (Emphasis added.)

On December 4, 2008, Defendant failed to submit any Rule 56.1 counter-statement.  Yet Defendant's 12/4/08 Reply, at p. 3, argued:  "No proof has been submitted that Mr. Ramirez was authorized to give notice on behalf of OCE [or Caterpillar?], or that he did so."

In view of Defendant's failure to submit any Rule 56.1 counter-statement, I choose to assume that, after discovery, Plaintiff might be able to prove that Mr. Ramirez actually was authorized to make a complaint on behalf of Caterpillar, and that he actually intended to exercise that authority when he made his notations on August 24, 2004.

Nevertheless, to avoid dismissal, Plaintiff must overcome an additional problem:  whether Mr. Ramirez's notations (made before the cartons were opened and their contents inspected) constituted a written complaint that the cargo was damaged.

### The issue of whether notations of damage to the cartons constituted a complaint that the cargo was damaged.

Plaintiff argues that "the specificity of Mr. Ramirez's notation suffices irrespective of the fact that it was limited to describing carton damage and not direct damage to the Cargo." (Pl. Memo. p. 9.) According to Plaintiff, Mr. Ramirez's notation "sufficiently put the carrier (KNI directly and KNAG vicariously) on notice to investigate, and - - especially considering the value of the shipment - - made clear that Océ would make a claim for that damage." (Pl. Reply p. 7, citing *Denby v. Seaboard World Airlines, Inc.*, 737 F.2d 172, 174 (2d Cir. 1984); see Pl. Memo. pp. 7-8, citing *Denby* and also *Insurance Co. of North America v. Yusen Air & Sea Service (U.S.A.), Inc.*, 1984 WL 934 (S.D.N.Y. Oct. 1, 1984).)

However, in *Denby* most of the cartons were entirely missing; the case did not involve damaged contents inside the cartons. The truck driver sought to give written notice that he received only 4 cartons instead of 40, *i.e.*, "that nine-tenths of a designated shipment ... were missing." 737 F.2d at 185. *Insurance Co. v. Yusen* is also inapposite. The shipper's letter to Yusen stated that "there was very substantial damage caused to one of the items." 1984 WL 934, at *1 (emphasis added). On such evidence, both opinions denied summary judgment to the defendants but did not grant judgment to the plaintiffs.

Defendant argues that Mr. Ramirez's notations fail to satisfy Article 31 because they "merely reflected that some cartons were torn or crushed. The writing itself ['SUBJECT TO INSPECTION AT LATER DATE'] contemplated later inspection of the cargo." (Def. Memo. p. 5.) Lauren Carribean, the branch manager of KNI's Chicago office, says:

> .... Packaging is designed to protect contents and is often crushed or otherwise damaged in transit. The exterior packaging damage is not considered a claimable item. It requires opening the packaging and carefully examining its contents before a determination or claim can be made that damage had occurred. KNI and to my knowledge, all forwarders and carriers, retain copies of our paper work and note exceptions in order to back track issues, if and when an actual claim for damage is issued and given to us. ....

(10/28/08 Carribean Decl. ¶6.)

Defendant's memorandum adds:

> .... Mr. Ramirez appropriately protected himself and NAVL, noting that a carton it received already showed damage.  Caterpillar was expected to open the carton, remove its packaging in order to determine that there was any visible damage to the machinery warranting a claim.  When in doubt a claim letter to KNAG that damages were discovered and that a claim would be made was all that was necessary.  ....

(Def. Memo. p. 5.)

Plaintiff responds by citing *Pesquera Navimar S.A. v. Ecuatoriana de Aviacion*, 680 F.Supp. 1526 (S.D. Fla. 1988), for the proposition that a notation regarding damage to an outer box can qualify as notice of damage to the contents inside the box.  But *Pesquera* was a special case.  A land transporter who picked up the goods wrote on the air waybill:  "415 Boxes sof[t] & wet ... **temp +36 degrees** Catalina not responsible for damages or temp."  680 F.Supp. at 1527 (emphasis added).  Judge Spellman emphasized that the cargo was frozen shrimp:

> .... [A] notation which states that boxes of frozen shrimp arrived soft and wet, at a temperature of + 36 degrees, and that the agent is not responsible for damages is notice that the shrimp arrived in a less than perfect condition.  Since the purpose of the notice requirement is just that, to give notice, this notation is sufficient notice.

*Id*.  By contrast, the case at bar involved cargo that was not perishable.  The cartons contained a printer and its accessories; these contents could have been in satisfactory condition even though Mr. Ramirez noted that the "tip and tell" had been activated and that some cartons were torn and crushed.

Defendant's position is supported by *Stud v. Trans International Airlines*, 727 F.2d 880, 883 (9th Cir. 1984):  "When [the cargo, a horse,] left [the carrier's] hands, [the horse] had been neither lost nor destroyed.  At most, according to the allegations of the complaint, the horse had been damaged.  [Ten days later, the horse died.] * * * Post-delivery destruction resembles the situation presented by goods that are merely damaged.  Mere damage to goods will often be hidden from view and fail to give the carrier actual notice of the loss.  Rather than inquire in each case whether damage short of destruction was sufficiently obvious to give the carrier actual notice, Article

-9-

26(2) [of the Warsaw Convention] adopts a blanket rule making notice of complaint a prerequisite to recovery for any damage to goods." Defendant's 12/4/08 Reply, at Point IV, second paragraph, cited six cases including the *Stud* decision, and quoted the last sentence of the portion that I have just quoted. Plaintiff's 12/5/08 Reply, at page 10, asserted that each of those cases "concerns whether a claimant surmount[ed] its burden of proving that cargo was delivered to the carrier in good order." That is not true of the *Stud* case.

In the circumstances of the case at bar, I conclude that Mr. Ramirez's notations about damage to the cartons did not constitute a complaint that the cargo was damaged.

## CONCLUSION

For purposes of Defendant's dismissal motion and Plaintiff's cross-motion, I choose to assume that NAVL's truck driver James Ramirez was authorized to make a written complaint on behalf of Caterpillar. However, I make the following conclusions as a matter of law. Mr. Ramirez's August 24, 2004 notations about damage to the cartons did not constitute a complaint that the cargo was damaged. His notations made clear that he did not open the cartons and that he did not have knowledge of the condition of their contents. Moreover, he specifically wrote "SUBJECT TO INSPECTION AT LATER DATE." Caterpillar received the cartons and their contents on September 16, 2004. Within the next 14 days, either Caterpillar or Océ or Océ's cargo underwriter was required to give the Defendant a written complaint. All three of them failed to do so. All three of them had no justifiable reason to assume that Mr. Ramirez's notations (a) constituted a complaint that the cargo was damaged, or (b) constituted a written statement that Caterpillar or Océ intended to hold K&N liable for damage to the contents of the cartons. There is no allegation that K&N committed any fraud. Accordingly, pursuant to Article 31 of the Montreal Convention, "no action shall lie against the carrier."

**I hereby grant Defendant's dismissal motion (Docket Item #52). I hereby deny Plaintiff's cross-motion seeking summary judgment (Docket Item #55).** I direct Defendant to submit a proposed Judgment by October 15, 2009.

*/s/ Douglas F. Eaton*
DOUGLAS F. EATON
United States Magistrate Judge

Dated:   New York, New York
         September 29, 2009

Copies of this Opinion and Order are being sent by fax and by electronic filing to:

Charles E. Schmidt, Esq.
Kennedy Lillis Schmidt & English
     Attorneys for Plaintiff (Fax: 212-430-0810)

Ernest H. Gelman, Esq.
     Attorney for Defendant (Fax: 212-332-8301)